IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RONALD VIDAL**, | Case No. 3:20-cv-210-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SAFEWAY, INC.**, | |
| Defendant. | |

John Burgess and Carl Post, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, Oregon 97205. Of Attorneys for Plaintiff.

David G. Hosenpud and Hank Stebbins, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, Oregon 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Ronald Vidal (Vidal) brings this action against Defendant Safeway, Inc. (Safeway), asserting claims of employment discrimination and retaliation in violation of federal and state law. Vidal's claims arise out of an incident that occurred at his place of employment in April 2018, resulting in his suspension without pay for two and a half weeks. On April 3, 2018, Vidal was working as a cashier-checker at a Safeway store in Portland, Oregon. Near the end of his shift, Vidal—a Black man—was involved in a verbal altercation with several white customers (the Incident). When Vidal came to work the next day, Safeway informed him that he

PAGE 1 – OPINION AND ORDER

was being preliminarily suspended without pay pending investigation. Safeway ultimately concluded Vidal's actions during the Incident contributed to its escalation and that he violated Safeway's workplace policies. Safeway determined that Vidal's suspension without pay would serve as his discipline. This lawsuit followed. Now before the Court is Safeway's motion for summary judgment, along with Safeway's objections to certain evidence submitted by Vidal. For the reasons explained below, the Court overrules Safeway's evidentiary objections and denies its motion for summary judgment.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND[1]

On April 3, 2018, Vidal was working as a cashier-checker at a Safeway store in Portland. Near the end of his shift, several white customers became upset about how long the checkout process was taking and began to direct harassing language and racial slurs at Vidal. One customer told Vidal to "shut the f**k up and do your job." Vidal replied, "[p]lease, that is not necessary to use that kind of language." The white customers continued to behave aggressively towards Vidal, and their hostility made Vidal fear for his safety. A white man called Vidal a "n****r boy" and added, "[y]ou're lucky you don't work for me, boy. Because I would have you fired for talking back." Vidal called for help from Safeway management but received no assistance. Vidal was concerned that the continued verbal assault could turn physical.

A few minutes later, a Safeway security officer finally approached Vidal's station and asked what was happening. Vidal described what had occurred and told the security officer that a specific customer needed to be removed from the store. The customer, however, was not removed. Instead, Safeway permitted the customer to continue to receive service from another Safeway checker. When Vidal left his station, near the end of his regular shift, Safeway management told the replacement checker to finish serving the customer who had directed racial slurs against Vidal.

The next day, Vidal arrived for work and was told by Safeway's management that Safeway was preliminarily suspending Vidal based on the events the previous day. Safeway told Vidal that he would not be paid during this time off and that he was not to return to the store until after someone from Safeway's Human Resources (HR) department called him. Vidal

---

[1] At oral argument, the Court granted Safeway's motion for relief (ECF 27) and declined to deem admitted certain requests for admission propounded by Plaintiff. The Court found that Plaintiff's requests had not been served. *See* ECF 33.

responded that he did nothing wrong and was in fact the victim, but Safeway replied that it "wanted to clear the air in case the customers come back."

Vidal remained suspended for two and one-half weeks without pay. During this suspension, Vidal attended a meeting with Safeway management to discuss the Incident. Vidal explained to the district manager what had happened. The district manager responded: "We have the tape, and it shows that you did not do anything wrong." Vidal's union representative was at this meeting and asked why Vidal had been suspended. The district manager replied that Safeway "wanted to make everybody safe because of the altercation." Vidal then asked if he would be reimbursed for his suspension because he was the one who had been attacked. The district manager said that he would investigate this.

On April 20, 2018, Vidal received a letter from Safeway's Associate Relations Manager, Catherine Cusimano. The letter stated that Safeway had determined that Vidal's actions during the Incident "contributed to the escalation of the incident" and that his "time off during this investigation will serve as a disciplinary suspension."

## EVIDENTIARY ISSUES

### A. Declaration of Ronald Vidal

Safeway objects to paragraphs 8, 9, and 10 of the Declaration of Ronald Vidal, arguing that they contain inadmissible hearsay. The Court overrules Safeway's objections, finding that the statements are not hearsay under either Rule 801(c)(2) or Rule 801(d)(2)(D) of the Federal Rules of Evidence.

### B. Exhibit 3 to the Declaration of John Burgess

Safeway argues that Vidal cannot rely on Exhibit 3 to the Declaration of John Burgess because it was never properly served on Safeway. Exhibit 3, however, contains three clips of security camera footage of the Incident, each from a different angle. All three clips were

produced by Safeway during discovery and were also offered by Safeway to the Court as Exhibit 8 to the Declaration of David G. Hosenpud.[2]

## SAFEWAY'S MOTION FOR SUMMARY JUDGMENT

### A. Burden-Shifting Framework

Vidal asserts claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII) Oregon Revised Statutes (ORS) § 659A.030. Under these provisions, it is unlawful for an employer to discriminate against an individual because of his or her race or retaliate against persons for engaging in protected conduct. 42 U.S.C. §§ 2000e-2, 2000e-3(a); ORS § 659A.030. The Ninth Circuit analyzes Title VII discrimination and retaliation cases under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Bergene v. Salt River Project Agr. Imp. and Power Dist.* 272 F.3d 1136, 1140 (9th Cir. 2001). Claims brought under ORS § 659A.030 are similarly analyzed under the same framework. *See Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011); *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657 (1986).

A plaintiff must first establish a prima facie case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802; *Bergene*, 272 F.3d at 1140. "The burden [of production] must then shift to the employer to articulate some legitimate nondiscriminatory reason for the employee's rejection." *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991) (quoting *McDonnell Douglas*, 411 U.S. at 802). "At that point, the burden shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination." *Id.* This can be done "either

---

[2] At oral argument, the Court asked Vidal's counsel why he had not simply relied on Safeway's exhibit. Vidal's counsel responded that he submitted his copy out of concern that Safeway might have abridged its submission, but Vidal's counsel admitted that he failed to compare the two. The Court has reviewed both videos and concludes that they are identical.

directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). "These two approaches are not exclusive; a combination of the two kinds of evidence may in some cases serve to establish pretext so as to make summary judgment improper." *Chuang v. Univ. of Cal. Davis Bd. of Trs.*, 225 F.3d 115, 1127 (9th Cir. 2000). Further,

> [a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because, "the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record."

*Id.* at 1124 (quoting *Schnidrig v. Columbia Mach. Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

### B. Racial Discrimination

#### 1. Prima facie case

To establish a prima facie case of discrimination, "a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination'" *Godwin v. Hunt Wesson, Inc.* 150 F.3d 1217, 1220 (9th Cir. 1998) (quoting *Burdine*, 450 U.S. at 253). This can be done either by direct evidence of discriminatory intent, or on a presumption arising from the *McDonnell Douglas* factors. *Wallis v. J.R. Simplot Co.* 26 F.3d 885, 889 (9th Cir. 1994). Direct evidence of discrimination is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the employer's decision." *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004) (simplified). "Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory

animus] without inference or presumption.'" *Vasquez v. Cnty. of Los Angeles*, 349 F3d 634, 640 (9th Cir. 2003) (quoting *Godwin* 150 F.3d at 1221) (alteration in *Godwin*).

A plaintiff may establish a prima facie case indirectly by showing: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, *or other circumstances surrounding the adverse employment action give rise to an inference of discrimination*." *Peterson v. Hewlett-Packard Co.* 358 F.3d 599, 603 (9th Cir. 2004) (emphasis added). The proof required to establish a prima facie discrimination case on summary judgment is "minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124 (quoting *Wallis*, 26 F.3d at 889). A plaintiff need only offer "very little" evidence to establish a prima facie case. *Wallis*, 26 F.3d at 889 (quoting *Sischo-Nownejad v. Merced Cmty Coll. Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991), *superseded by statute on other grounds, as recognized in Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005).

Safeway does not contest that Vidal is a member of a protected class or that he suffered an adverse employment action in the form of his two-week suspension without pay. Instead, Safeway focuses primarily on the fourth factor, with a brief argument regarding the second factor.[3] Safeway primarily argues that Vidal has failed to establish a prima facie case because he

---

[3] Safeway argues that Vidal's performance during the Incident shows that Vidal "did not perform his job competently" and engaged in behavior "at odds with the customer service requirements in his job description." ECF 16, at 13. Whether Vidal violated Safeway's policies, however, present a disputed issue of fact. Vidal presents both his own declaration and email statements from witness Terrence Rawls. When the Court views the evidence in the light most favorable to the nonmoving party, as it must at this stage of the litigation, whether Vidal complied with Safeway policy presents a disputed issue of material fact. Further, whether Vidal violated Safeway's policies on one occasion is a separate inquiry from whether he is qualified for his position.

PAGE 7 – OPINION AND ORDER

has failed to provide comparative evidence of disparate treatment between Vidal and individuals outside his protected class. Comparative evidence, however, is only one of two ways to satisfy the fourth factor. Here, Vidal raises a genuine dispute of material fact by showing that "other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson*, 358 F.3d at 603. Although Safeway argues that Vidal has not offered enough evidence to establish this inference, "very little" evidence is needed to establish a prima facie case of discrimination. *Id.* (quoting *Chuang*, 225 F.3d at 1124). Weighing evidence and assessing credibility are for the factfinder at trial and are inappropriate for the Court at summary judgment. *See Anderson*, 477 U.S. at 255.

Vidal has met this minimal burden. As described above, Vidal's evidence, viewed in the light most favorable to Vidal, shows that he unsuccessfully attempted to calm two angry white customers who had begun to direct racial slurs and other racially charged language at Vidal. In addition, Vidal states that he attempted to obtain assistance from Safeway's management, but they did not timely respond or assist Vidal. As a result, Vidal feared for his safety. Under Vidal's version of the facts, he did not cause or even contribute to the altercation and did not threaten the white customers.

As noted, Vidal's version of events is supported by emails sent to Safeway by a Black customer, Terrence Rawls, who witnessed the Incident. Rawls stated in his emails that he heard the white customers yell at Vidal "in a very aggressive way," "using expletives as well as derogatory language," characterizing Vidal as "boy," and behaving in a "very hostile way" so as to make the situation "not safe" and other customers "uncomfortable." ECF 25, at 3 (Ex. 1). Rawls also stated that Vidal tried to "deescalate the customers," but they became more hostile and volatile and that although "[t]here were racial biased comments yelled at [Vidal], at no point

or time did I see him retaliate with aggression or immaturity or unprofessionalism." *Id.* at 4. Rawls also stated that he thought one of the white customers was going to physically attack Vidal. *Id.* Rawls described his multiple efforts to get someone at Safeway to assist Vidal, to no avail, and condemned Safeway for failing to come to Vidal's aid. *Id.* at 3-4.

Vidal also argues that Safeway's crediting of the white customers' accounts of the altercation—who reported that Vidal's actions escalated the incident—over Vidal himself and Rawls, a Black customer and witness who corroborated Vidal's version of events, constitutes disparate treatment that is further evidence of discrimination. Vidal adds that that had he been white, Vidal would have received more assistance from Safeway at the time of the Incident and his version of events would have been afforded more credibility.[4] Vidal's proffered evidence is enough to establish a prima facie case of discrimination.

## 2. Legitimate, Non-Discriminatory Reason for Adverse Employment Action

Because Vidal satisfies his prima facie burden, Safeway must articulate a legitimate, non-discriminatory rationale for Vidal's suspension. *Burdine*, 450 U.S. at 254-55; *Wallis*, 26 F.3d at 889-90. Safeway's proffered nondiscriminatory reason for suspending Vidal is that his conduct during the Incident violated the "Violence Free Workplace" section of Safeway's employee policy. Safeway argues that it has a zero-tolerance policy towards workplace violence and threats. Safeway adds that its ultimate decisionmaker, Safeway Associate Relations Director Catherine Cusimano, reviewed the evidence available to her and concluded that Vidal had

---

[4] Both in Safeway's response and at oral argument, Safeway interpreted this as relying on an implicit bias argument. Safeway argued that relying on implicit bias is unsupported by law or admissible evidence. At oral argument Vidal explained that he was not relying on any conclusions of implicit bias.

PAGE 9 – OPINION AND ORDER

violated Safeway's policy by threatening customers. The violation of a company policy is a legitimate, non-discriminatory reason for a disciplinary adverse employment action.

### 3. Pretext

Because Safeway has presented a legitimate, nondiscriminatory reason for disciplining Vidal, the burden of persuasion returns to Vidal to show pretext. Pretext may be established: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Snead v. Metro. Prop. & Cas. Ins.*, 237 F.3d 1080, 1093-94 (9th Cir. 2001) (quoting *Burdine*, 450 U.S. at 256). A plaintiff may rely on a combination of the two types of evidence and does not "have to introduce additional, independent evidence of discrimination . . . beyond that constituting her prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Id.* (simplified). "Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). "However, that requirement is tempered by [the Ninth Circuit's] observation that, in the context of Title VII claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is 'hardly an onerous one.'" *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007) (quoting *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). Specific and substantial evidence is evidence that is sufficient to raise a genuine issue of material fact under Rule 56(c) of the Federal Rules of Civil Procedure. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006).

When viewed in the light most favorable to Vidal, the evidence establishes a genuine factual question as to whether Safeway's reason was pretextual. The two parties present different versions of the Incident and subsequent events. The differences are both material and

irreconcilable. For example, Safeway argues that in response to customer complaints about the store being short-staffed, Vidal responded, "I'm just trying to do my f**ing job and get out of here at six" and told one of the customers involved, "I'll whip your f**ing ass, meet me in the parking lot after six!" ECF 16, at 5. Vidal, on the other hand, contends that at all times he remained calm and tried to defuse the situation, first by assuring the customer he would work as fast as possible, then by asking the customer to not use that kind of language, and finally by calling security. Rawls describes similar conduct by Vidal. Thus, although Safeway states that it suspended Vidal due to his threats, which violated Safeway's policy, Vidal denies he made any threatening statements to customers or in any other way violated Safeway's policy.

Plaintiff provides sufficient evidence showing that there is a genuine dispute of material fact as to whether Vidal did, in fact, violate Safeway's "Violence Free Workplace" policy during the Incident. This "undermines the credibility of the employer's articulated reasons." *Noyes*, 488 F.3d at 1171. Plaintiff also provides sufficient evidence raising a genuine dispute regarding Safeway's investigation and final disciplinary decision, such as the purported statement to Vidal from a Safeway district manager that the video showed that Vidal did nothing wrong, to call into question whether Safeway "honestly believe[d] its proffered reason." *Villiarimo*, 281 F.3d at 1063. "At the summary judgment stage, the trial judge's function is not himself to weigh the evidence but to determine whether there is a genuine issue at trial." *Anderson*, 477 U.S. at 242-43.

## C. Retaliation

Title VII retaliation is analyzed under the same burden shifting framework as Title VII discrimination. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). "To establish a prima facie case of retaliation, a plaintiff must prove (1) [he] engaged in a protected activity; (2) [he] suffered an adverse employment action; and (3) there was a causal connection

between the two." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). "Protected activity" in the retaliation context includes the filing of a charge, filing of a complaint, or providing testimony regarding an employer's alleged unlawful practices. *Raad v. Fairbanks North Star Borough Sch. Dist.* 323 F.3d 1185, 1197 (9th Cir. 2003). It also includes other activity intended to oppose an employer's discriminatory practices. *Id.* The ultimate decisionmaker who issues the adverse employment action must have been aware of the protected activity. *Id.*; *see also Cohn v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).

As described above, the parties do not dispute that Vidal suffered an adverse employment action. They do, however, disagree as to the nature of the protected activity that took place and whether there was a causal connection between that activity and the adverse employment action. Additionally, neither party's theory of protected activity is a model of clarity, nor are the parties particularly responsive to each other's arguments.

### 1. Protected activity

Vidal argues that the totality of his response to the white customers' racist comments constitutes protected activity—including Vidal's direct responses to the customers, his request for assistance from management, and walking away from the checkstand when the assistance he requested was not timely provided. *See* ECF 23, at 14 ("Mr. Vidal's opposition to that racial harassment was clearly protected activity . . . . Raising one's voice to request assistance and oppose racially harassing conduct is protected activity."); *see also id.* at 15 ("Mr. Vidal asking for help from staff, objecting to being called a racial slur, and walking away from being called racial slurs when no help was offered was protected opposition . . . . Disciplining him for doing so is unlawful."). Safeway, however, construes Vidal's theory of protected activity as solely Vidal's complaints to Safeway management about the alleged harassment during the Incident.

PAGE 12 – OPINION AND ORDER

Safeway argues that there is no causal connection between the suspension and any complaint that Vidal made to management after the Incident.[5]

Other circuits have held that "protected activity" for a retaliation claim can extend to protesting discrimination "by society in general." *See Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 175 (1st Cir. 2015) (quoting *Fatini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009)). The Ninth Circuit, however, has not yet specifically adopted this type of retaliation claim.

Beginning in *Silver v. KCA, Inc.*, the Ninth Circuit required that a plaintiff's "opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." 586 F.2d 138, 141 (9th Cir. 1978). The Ninth Circuit subsequently expanded on *Silver*, quoting from that case and then holding that an employer may be held liable under Title VII for the conduct of private individuals, such as customers, "where the employer either ratifies or acquiesces in the [conduct] by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997); *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir. 2002) ("In this circuit, employers are liable for harassing conduct by non-employees 'where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct.'" (quoting *Folkerson*, 107 F.3d at 756)).

*Folkerson's* reasoning has been applied to the underlying conduct giving rise to the protected activity in retaliation cases. *See Couture v. JMJ, Inc.*, 172 F.3d 875 (9th Cir. 1999)

---

[5] Safeway also argues that it is not clear that Vidal made any complaint to management during the Incident. Because factual ambiguities must be resolved in Vidal's favor, *see Lindahl*, 930 F.2d at 1437, the Court accepts that Vidal did make a complaint during the Incident.

(affirming grant of summary judgment against retaliation claims because there was no evidence that the employer "either ratified or acquiesced in" the alleged underlying conduct giving rise to the claimed protected activity); *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 2012 WL 12883669, at *6 (D. Haw. Oct. 9, 2012) ("An employer may be liable for discriminatory conduct, including retaliation, by non-employees 'where the employer either ratifies or acquiesces in the [conduct] by not taking immediate and/or corrective actions when it knew or should have known of the conduct.'" (quoting *Freitag v. Ayers*, 468 F.3d 528, 538 (9th Cir. 2006)); *Sterrett v. Sierra Sw. Co-op Servs., Inc.*, 2011 WL 3924861, at *14 (D. Ariz. Sept. 7, 2011) ("Plaintiff has not alleged any facts which would indicate that Defendant ratified or acquiesced to any alleged sexual harassment by Julian Garcia 1 or 2. . . . As such, Plaintiff cannot meet her burden to demonstrate that she was engaged in a protective activity.").

The Ninth Circuit also has discussed this issue after *Silver*, in the context of considering the conduct of a potentially private individual. In reversing a district court decision that relied on *Silver* and granted summary judgment to an employer, the Ninth Circuit explained:

> But we need not delve into the subject whether "protected activity" under Title VII includes an employee's protest to her employer of an outside consultant's conduct. As we first explained in *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978), a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII. To establish the first element of a prima facie case, Trent must only show that she had a "reasonable belief" that the employment practice she protested was prohibited under Title VII.

*Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (quoting *Sias*, 588 F.2d at 695); *see also McZeal v. City of Seattle*, 2006 WL 3254504, at *7 (W.D. Wash. Nov. 9, 2006) (noting that the Ninth Circuit had clarified the retaliation standard under Title VII post-*Silver* and that "[a]s a result, Plaintiff only must show that he had a reasonable belief that it was unlawful under

Title VII for Ms. Marangon to make racially offensive remarks in the workplace; he does not need to demonstrate that Ms. Marangon's comments actually violated Title VII").

Through Vidal's declaration and Rawls' emails, Vidal has shown that both he and Rawls alerted Safeway management and security that Vidal was being racially harassed by white customers and that Safeway management refused to come to Vidal's aid. This raises a genuine issue of fact whether Safeway ratified or acquiesced to the conduct of the white customers that Vidal contends he complained about and then protested by walking away from his checkstand. Further, Vidal's evidence shows that he had a reasonable belief that the practice he protested was prohibited under Title VII. Thus, under either the ratification/acquiescence or reasonable belief standard, Vidal sufficiently has shown that the totality of his conduct—his responses to the customers, his and Rawls's complaints to Safeway management and security, Vidal's requests for assistance, and Vidal's walking away from his checkstand—constituted protected conduct.

### 2. Causation

The parties similarly are unresponsive to each other's theories of causation, in large part due to their different theories of protected activity. A key requirement for the causation element of a retaliation claim is that the ultimate decisionmaker—in this case Catherine Cusimano—must have been aware of the plaintiff's protected activity before issuing the adverse employment action. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Safeway focuses on this requirement in its motion and reply, but because the parties disagree as to the contours of Vidal's protected activity, they also disagree both as to what Cusimano knew and what Cusimano needed to know for Vidal to prevail.

Based on the evidence offered and considering how the Court has construed Vidal's protected activity, the Court concludes that a reasonable jury could find that Cusimano was aware of that protected activity before making the final determination regarding Vidal's

suspension.[6] In Cusimano's letter to Vidal detailing the results of Safeway's two-week investigation, Cusimano stated: "[w]hile the company finds your actions on the day in question contributed to the escalation of the incident and were inappropriate, the company recognizes the customers' comments and other factors at the time attributed to your response." ECF 25, at 9. In this letter, Cusimano acknowledges Vidal's conduct, acknowledges it was in response to customer comments, and confirms that Vidal's suspension is directly connected to his actions during the incident. As those actions consist of Vidal's alleged protected activity, Vidal can establish Cusimano's knowledge and causation generally.

Because a retaliation claim in this context is governed by essentially the same burden shifting framework as a discrimination claim, the Court's analysis on Vidal's discrimination claim is instructive on the final two elements of a retaliation claim: adverse action and causation. When applied to Vidal's retaliation claim, the second and third steps of the burden shifting framework leads the Court to a similar analysis and identical result as when applied to Vidal's discrimination claim. Safeway cites a "Violence Free Workplace" policy violation as its professed nondiscriminatory reason, but Vidal has offered specific and substantial evidence that the reason is pretextual—including whether Vidal violated that policy at all. It bears repeating that the parties disagree on a great number of core facts in this case, and both offer evidence, sometimes the same evidence, to support their disparate positions. As with Vidal's discrimination claim, granting summary judgment would require impermissibly resolving factual

---

[6] At oral argument, Safeway contended that, at the time of Vidal's initial suspension, Cusimano could not have known that Vidal is Black or that the customers involved were white and using racist language. As Vidal pointed out in response, however, the question is not whether Cusimano knew at the time of the *initial* suspension in response to Vidal's protected activity, but whether she knew at the time of the adverse employment action—here, Safeway's final decision to make Vidal's suspension a disciplinary response and without pay.

PAGE 16 – OPINION AND ORDER

disputes, weighing persuasiveness of the parties' evidence, and evaluating credibility. *See Anderson*, 477 U.S. at 255.

## CONCLUSION

The Court DENIES Safeway's Motion for Summary Judgment (ECF 16). The Court OVERRULES Safeway's Evidentiary Objections included in Safeway's reply (ECF 29).

**IT IS SO ORDERED**.

DATED this 9th day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge